CITY OF ST. JOSEPH *ex rel.* KING HILL BRICK & MANUFACTURING COMPANY, Appellants, v. MICHÆL J. McCABE *et al.*, Respondents.

Kansas City Court of Appeals, May 21, 1894.

1. **Municipal Corporations:** DUTY OF CITY ENGINEER: TAX BILL. It is the duty of the city engineer under the charter of a city of the second class to take charge of and superintend street improvements

and to issue tax bills therefor when, and only when, completed in substantial compliance with the contract and ordinances of the city.

2. ———: ———: ———: JUDICIAL V. MINISTERIAL. It is the duty of the city engineer to pass judgment on the work of street improvement and determine whether or not the contract has been substantially complied with; and while he is a ministerial officer, he is vested with *quasi* judicial functions, and in exercising such judicial functions, he is not responsible to. one receiving an injury therefrom, unless he acts maliciously and willfully wrong.

3. ———: ———: ———: ———. In this case there is no evidence tending to show the city engineer acted knowingly wrong or from a corrupt motive, but he acted as advised, and in his judgment the paving contract was substantially complied with.

*Appeal from the Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Spencer & Strop* and *B. R. Vineyard* for appellant.

(1) It was the duty of the city engineer, under the ordinances of the city and under the charter as a city of the second class (1 R. S. 1889, sec. 1406, latter part of section on page 408), to take charge of and superintend the improvement of Fifth street, and to issue tax bills therefor in favor of the contractors, when, and only when, the work was completed in substantial compliance with the contract and the ordinances of the city. (2) The duties of the city engineer in looking after and seeing to the enforcement of contracts for street improvements and issuing tax bills therefor, is ministerial. As said by the St. Louis court of appeals (15 Mo. App. 264 at top) in considering the duty of city officers, in issuing bills for public improvements: "The acts of these officers are ministerial, and not judicial. The mere fact that an official act requires the exercise of judgment and deliberation does not make it a judi-

cial act." *Eyermann v. Schollay*, 16 Mo. App. 500; *St. Louis v. Clemens*, 43 Mo. 395. (3) The supreme court of the state has often held that the city engineer after the expiration of his term, and after his successor has taken charge of the office, may amend or certify anew tax bills previously issued by him. *Kiley v. Cranor*, 51 Mo. 541; *Kiley v. Oppenheimer*, 55 Mo. 374; *Stadler v. Roth*, 59 Mo. 400; *Morley v. Weakley*, 86 Mo. 455; *Galbreath v. Newton*, 45 Mo. App. 312. In fact, their conduct is so far from being judicial, that they may act in issuing such bills without personal knowledge, on the information of their clerks or assistants. *St. Louis v. Olters*, 36 Mo. 463; *Kefferstein v. Knox*, 56 Mo. 186. (4) It is a well settled rule that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do the act, or performs it in a manner not warranted by law, he is liable in damages to any person injured thereby. *Ins. Co. v. Leland*, 90 Mo. 177; *Knox County v. Hunolt*, 110 Mo. 67; *Amy v. Supervisors*, 11 Wall. 136; *Bennett v. Whiting*, 94 N. Y. 302; *Hover v. Barkhoof*, 44 N. Y. 113. And the fact that the officer may have acted in good faith in such case, will be no defense. *Amy v. Supervisors, supra; Knox County v. Hunolt, supra*. (5) A ministerial officer is equally liable for his nonfeasance, misfeasance, or malfeasance, whereby he neglects to perform, or fails to use due care or skill in performing, or through ignorance, inattention or willfulness, exceeds or abuses his powers in performing that which the law enjoins as a duty upon him. In every such case he is responsible to *any* one who may be injured by his conduct. Mechem on Public Officers, secs. 664, 665, and the many cases there cited. The evidence in the case at bar, shows that McCabe not only certified to falsehoods in the bills issued by him, but did so knowingly. He not only

knew that the contract for the work had not been performed, but he had assumed to change the contract whereby it might be left short of performance. *Curtiss v. Colby*, 39 Mich. 456; *Brick Co. v. Hamilton*, 51 Mo. App. 120.

*Hall & Pike* for respondents.

SMITH, P. J.—This is a suit instituted in the circuit court of Buchanan county, to recover from defendant, McCabe, and the sureties on his bond as city engineer of the city of St. Joseph, the amount which relator, the said Brick and Manufacturing Company, lost on certain tax bills for street improvement, purchased by it, and which were illegally issued and certified by said McCabe, as such city engineer. The petition after setting out the official bond of McCabe, and the conditions thereof, charges that said conditions were broken in the issue and certification of said tax bills to H. G. Getchell & Company, who sold and transferred them to relator, who paid therefor the face value thereof, relying upon their correctness and upon the truth of the matters therein certified by said McCabe as said city engineer. The duty of said McCabe as such engineer in charge of the work, to issue bills therefor when the same was .fully completed in compliance with the contract, is then alleged. It is next charged that the tax bills in question were issued by said McCabe without such compliance on the part of the contractors, and that he therein falsely certified that said contractors had fully complied with their contract, and that there was due then the amounts named in said bills, which had been properly charged against the property therein described, and that the said tax bills were correct—which state-

ments in said tax bills said McCabe knew to be false; but relator bought the bills in good faith, relying upon the truth of the matters therein stated. The petition then particularly describes the bills, and wherein the contractors had failed to comply with their contract, which failure had rendered the bills absolutely void, as decided by this court in the case of this *relator v. Hamilton* (51 Mo. App. 120) and asked judgment for $701.95, the amount which relator had paid therefor. The answer was a general denial.

At the trial the relator introduced in evidence various city ordinances of the city of St. Joseph defining the powers and prescribing the duties of the city engineer in relation to the construction of public works and the improvements of streets and the issuance of tax bills therefor, which need not be specifically mentioned in this connection. Relator next read in evidence the bond sued on; also the contract for doing the work mentioned in the tax bills; also the special ordinance for doing the work, and the proceedings of the city council awarding the contract.

The relator then introduced as a witness H. G. Getchell, member of the firm of H. G. Getchell & Company, the contractors, whose testimony tended to prove the allegations in the petition relative to the work and the failure to complete the contract, which failure was shown to result from the directions of McCabe, the engineer in charge of the work, which directions the contractors followed, and the issuance of the tax bills to his firm, and their transfer by said firm for value to relator. On account of the failure to comply with the contract for the work as testified to by this witness, this court, in the case above referred to, declared these very tax bills to be absolutely void. The relator next read in evidence the tax bills, one of which is set out in full in the abstract and the assignment of

the bills by the contractors to relator. The tax bill copied into the abstract purports, first, to show the amount due from the parties named therein as the owners, and is followed by a certificate of the engineer, McCabe, that, when the work was completed, he computed the cost thereof and apportioned it among the several lots and charged each lot with its proper share thereof, and that the amount named in the bill is the proper amount for which the lot therein described is chargeable.

The relator next introduced as a witness, Charles H. Sieman, who testified to the purchase of the tax bills by the relator in good faith, and that it paid therefor the full face value thereof. This witness testified that he was president of the relator, that he had never seen and did not know the terms of the contract, though he had understood that there were to be two courses of brick to be placed in constructing the pavement on the street; that relator purchased the bills, supposing and in reliance on the fact that they were valid, and that the certificate of the engineer thereto was true. With the close of the testimony of this witness the plaintiff rested.

The defendants, over the objections and exceptions of plaintiff, were permitted to prove by defendant McCabe that he authorized a change to be made in the way of doing the work from that provided in the contract, with the consent of the contractors, H. G. Getchell & Company, and to give his reasons for conferring said authority, he stating among other things that the change was made upon the assurance of Mr. Reed, the city counselor, that it might be legally changed. This authorization for a change of the work of the city engineer, was shown to be in writing and was introduced in evidence by defendants over the objections made that it was incompetent and the excep-

tion saved by plaintiff to the ruling of the court in permitting it to be read. McCabe testified that he refused to give the authority for a change until he procured a written release from H. G. Getchell & Company releasing the city and its officers from all liability, which written release was claimed by him to have been lost. Both Getchell and Burnes, constituting the firm of Getchell & Company, on rebuttal denied that any such release was ever asked for, or given. Sieman also, the president of the relator, in rebuttal swore that he never knew or heard anything about any such release. On the cross-examination of McCabe, which was devoted principally to inquiries about said release, he stated that he certified to the tax bills read in evidence and that he changed the terms of the contract for the work for the benefit of the public and to conform to the street railway.

Defendants next introduced as a witness W. F. Dyer, McCabe's assistant, whose testimony was devoted principally to the subject of the alleged release by H. G. Getchell & Company and wherein his statements were in confirmation of those of McCabe on that subject.

At the close of the evidence the defendant asked the court to instruct the jury that under the pleadings and evidence their verdict must be for the defendants. Thereupon the plaintiff took a nonsuit with leave to move to set the same aside and in due time filed its motion to set aside the nonsuit and grant it a new trial which was overruled, and judgment was given accordingly and relator appealed.

It was the duty of the city engineer, under the ordinances of the city and under its charter as a city of the second class (1 R. S. 1889, sec. 1406, latter part of the section on page 408), to take charge of and superintend the improvement of Fifth street, and to issue the

tax bills therefor in favor of the contractors, when, and only when the work was completed, in substantial compliance with the contract and the ordinances of the city.. It was the duty of the city engineer to pass *judgment* on the work of paving the street, and determine whether or not the contract had been substantially complied with. While, then, he is a *ministerial officer* he is vested with *quasi judicial* functions. In such a case the rule is, "that a ministerial officer, acting in a matter before him with discretionary power, or acting in a matter before him judicially, or as a *quasi* judge, is not responsible to any one receiving an injury from such act, *unless the officer act* maliciously and willfully wrong." *Reed v. Conway*, 20 Mo. 22 at p. 434, and numerous cases there reviewed. *Edwards v. Ferguson*, 73 Mo. 686. "To render a ministerial officer acting in a capacity in its nature judicial, liable, it must be shown that his decisions were not merely *erroneous*, but that he acted from a spirit of willfulness, corruption and malice; in other words, that his action was knowingly wrongful, and not according to his honest convictions in respect of his duty." *Pike v. McGown*, 44 Mo. 496, 497. To same effect see *Edwards v. Ferguson*, 73 Mo. 686, and *Knox Co. v. Hunolt*, 110. Mo. 75; also Mechem, Public Officers, sections 636–640, 661.

There is nothing in the evidence tending to show that McCabe acted knowingly wrong or from corrupt motive. He was advised that it was proper, and in his judgment the paving contract was substantially complied with. He ought not to be held.

In this view of the case the other points discussed in the brief of counsel for relators need not be noticed.

It results that the judgment must be affirmed. All concur.